IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

TERESA GAYLE JONES,

    Plaintiff,

v.                                              No. 13-1134

NANCY A. BERRYHILL,[1] Acting
Commissioner of Social Security,

    Defendant.

---

## ORDER AFFIRMING THE DECISION OF THE COMMISSIONER

---

### *INTRODUCTION AND PROCEDURAL BACKGROUND*

Before the Court is the Social Security action of the Plaintiff, Teresa Gayle Jones, pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Acting Commissioner of Social Security denying her claim for disability insurance benefits ("DIB"). On April 12, 2010, she applied for disability and DIB alleging disability as of July 23, 2009. Jones subsequently amended her onset date to May 13, 2010. The claim was denied initially and upon reconsideration. Following a hearing, Administrative Law Judge ("ALJ") K. Barlow denied her claim on January 6, 2012. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on March 23, 2013, and this action was commenced two months later. Before the Court is the Plaintiff's first motion for judgment on the pleadings. (Docket Entry ("D.E.") 10.)

---

[1] At the time the complaint was filed, Carolyn W. Colvin was Acting Commissioner of Social Security. Since January 23, 2017, the post has been held by Nancy A. Berryhill.

*ADMINISTRATIVE HEARING*

The ALJ heard testimony from the Plaintiff and from Nancy Newbell Hughes, a vocational expert ("VE"). Jones had an eighth grade education and past work as a cook, cashier, stocker and machine operator. She also acted as caregiver to her disabled husband. Plaintiff told the ALJ she was unable to work because she could not tolerate being around other people. On an average day, Jones helped her mother get her handicapped brother up, prepared her husband's meals and spent the remainder of the day watching television. She reported mood swings, memory problems and anxiety. Plaintiff also suffered from deep vein thrombosis ("DVT") in her left leg, for which she underwent surgery shortly before the hearing.

The VE characterized Jones's previous relevant jobs as requiring medium and light levels of exertion. She opined that, assuming simple routine tasks, no exposure to the public, and occasional changes in the work environment, Plaintiff could perform jobs in the economy, including conveyor offbearer, floor waxer and box truck washer.

*ADMINISTRATIVE DECISION*

Upon hearing testimony and reviewing the evidence, the ALJ made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2011.

2. The claimant did not engage in substantial gainful activity during the period from her amended alleged onset date of May 13, 2010 through her date last insured of June 30, 2011 (20 CFR 404.1571 *et seq*).

3. Through the date last insured, the claimant had the following severe impairments: history of deep vein thrombosis, major depressive disorder and adjustment disorder with depression and anxiety. (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of

one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c)[2] except that she needs simple, routine tasks with no exposure to the public and only occasional changes in the work environment.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on October 22, 1964 and was 46 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the dated [sic] last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from May 13, 2010, the alleged onset date, through June 30, 2011, the date last insured (20 CFR 404.1520(g)).

(Administrative Record ("AR") 14-23.)

*PLAINTIFF'S STATEMENT OF ERRORS*

The Plaintiff challenges the ALJ's unfavorable ruling on four grounds:

1. The ALJ erred by significantly misrepresenting and/or mischaracterizing the evidence and not giving proper consideration to Plaintiff's mental health treatment records and assessments;

---

[2]The regulation defines medium work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

2. The ALJ erred by providing great weight to the assessment of the State agency medical consultant regarding Plaintiff's physical limitations, as this opinion was provided without the benefit of Plaintiff's updated medical records;

3. The ALJ erred by failing to provide for any limitations in [her] residual functional capacity finding which result from Plaintiff's deep venous thrombosis, which the ALJ [herself] found to be a severe impairment; [and]

4. [The] ALJ erred in failing to consider or evaluate the Plaintiff's obesity n accordance with Social Security Ruling 02-01p.

(D.E. 11 at PageID 342-43.)

*STANDARD OF REVIEW*

A federal court's review of the Social Security Administration's denial of a claim for benefits "is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). "Substantial evidence requires more than a mere scintilla but less than a preponderance; substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (internal quotation marks omitted). "This standard presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Sorrell v. Comm'r of Soc. Sec.*, 656 F. App'x 162, 168 (6th Cir. 2016). "If substantial evidence supports the ALJ's decision, then reversal is unwarranted even if substantial evidence backs the opposite conclusion." *Turk v. Comm'r of Soc. Sec.*, 647 F. App'x 638, 639 (6th Cir. 2016) (citing *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). Stated differently, "[u]pon a finding that there is substantial evidence to support the ALJ's findings, [the court] must affirm, and may not even inquire whether the record could support a decision the other way." *Staymate v. Comm'r of Soc.*

*Sec.*, ___ F. App'x ___, 2017 WL 902136, at *3 (6th Cir. Mar. 7, 2017) (quoting *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994)) (internal quotation marks omitted).

To be entitled to DIB, a claimant must be "under a disability within the meaning of the Social Security Act." *Sorrell*, 656 F. App'x at 168-69 (quoting *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009)). The statute defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "To be found disabled, a claimant's impairments must not only prevent the claimant from doing her previous work, but they must also render the claimant unable to engage in any other kind of work that exists in significant numbers in the national economy." *Sorrell*, 656 F. App'x at 169 (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)) (internal quotation marks omitted).

> The Social Security Administration processes applications for relief by asking five questions: (1) Does the claimant show she is not engaged in substantial gainful activity? (2) Does the claimant have a severe impairment? (3) Does the impairment meet any one of the items on a list of impairments presumed severe enough to render one disabled? (4) Can the claimant perform her past jobs? (5) Can the claimant perform other jobs that exist in significant numbers in the national economy?

*Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 903 (6th Cir. 2016) (internal quotation marks omitted). Entitlement to DIB requires disability prior to the expiration of the claimant's insured status, *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990), which, in this case, was June 30, 2011.

*ANALYSIS*

<u>Mental Impairments.</u>

Jones was referred to Dennis W. Wilson, Ph.D., for a consultative psychological evaluation, which was conducted on May 3, 2010. She told him that she had repeated the third grade and left school in the ninth grade because she was pregnant and got married. When asked why she was incapable of working, Jones responded that her husband, who had suffered a brain injury after being struck by a train several years earlier, was constantly with her. She explained that she did not feel sociable and the thought of doing the same thing over and over made her "want to bawl." (AR 174.) Plaintiff reported that, if she became "super angry," she would want to "drive off of a cliff," but never had any intention of doing so. (*Id.*)

Dr. Wilson recorded Jones's grooming and hygiene as marginal and her intellectual functioning in the low-average range. He also noted difficulties with attention, concentration and linear reasoning. Her affect was broad, mood dysthymic, and verbalizations disjointed. Plaintiff's social skills and memory were good and she was oriented to person, place, time and situation. There was no indication of recurrent, intrusive, obsessive, bizarre or unwanted thoughts; compulsive behaviors; current suicidal or homicidal ideation; hallucinations or delusions; or phobic-type reactions. The physician concluded she suffered from depression, which apparently began as a situational problem resulting from her husband's accident and progressed into major depressive disorder due to her stressful life circumstances. With respect to Jones's husband, Dr. Wilson noted that she appeared overwhelmed and significantly preoccupied with his care and condition.

Dr. Wilson's diagnosis was major depressive disorder, recurrent episode, moderate, and adjustment disorder with both depression and anxiety. He assigned a GAF score of 60[3] and opined that she was moderately limited in the ability to sustain concentration and persistence and interact with others, and mildly limited in understanding, remembering, and adapting to changes and requirements.

In a psychiatric file review conducted for the purpose of determining Plaintiff's residual functional capacity ("RFC")[4] on May 19, 2010, Jenaan Khaleeli, Psy.D. concluded she suffered from major depressive disorder and adjustment disorder with depression and anxiety. The physician rated her functional limitations in the areas of maintaining social functioning and concentration, persistence or pace as moderate; her restrictions of activities of daily living as mild; and no episodes of decompensation. It was determined by Dr. Khaleeli that Jones was moderately limited in her abilities to understand, remember and carry out simple and one- to three-step detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday without interruption from psychologically based symptoms; interact appropriately with the general public; get along with co-workers and peers; accept instructions and respond appropriately to supervisor criticism and changes in the work setting. With respect to Plaintiff's functional capacity, the reviewer opined that she could concentrate and persist for at least a two-hour period in an eight-hour workday with customary breaks and adapt to infrequent change.

---

[3] A GAF (Global Assessment of Functioning) score represents a "subjective evaluation of a claimant's overall functional ability." *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 470 n.1 (6th Cir. 2016).

[4] An RFC is defined in the regulations as "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

On Social Security Administration function reports completed by the Plaintiff in April and June of 2010, she reported having trouble concentrating because of her husband, being "stressed all the time" (*id.* at 128), and disliking change. She further indicated that she did not need to be reminded to do things; that she would "listen to what I only want to hear," but would do what was asked of her (*id.* at 150); and that she could pay attention if she was interested. She stated therein that, on a regular day, she dressed and fed her husband, cleaned house for two hours, ran errands and watched television. She reported driving a car; shopping for groceries, clothing and medication for her husband twice weekly; paying bills; using a checkbook; handling a bank account; doing laundry; cleaning floors; washing dishes and mowing the yard. On the form dated June 23, 2010, Jones stated, "I'm not one of those persons that has something wrong with them all the time," adding that a hysterectomy and getting her "nerves to straighten up" would resolve her issues. (*Id.* at 152.) During a consultative medical examination performed on July 27, 2010, Robert Sanner, M.D., noted that, while she gave "inappropriate" answers to questions concerning her physical condition, her intellectual functioning "was apparently normal." (*Id.* at 200.)

On December 13, 2010, the claimant presented to the Tennessee Department of Health, complaining of depression, nervousness and anxiety. She was referred to Pathways, a behavioral health services agency. In an initial assessment form dated December 29, 2010, Pathways personnel documented depressed mood, poor sleep, thoughts of guilt, and family and financial stressors. All other aspects of her mental status were listed as normal, average or appropriate. The assessment also indicated ability to express needs, good physical health, independence in activities of daily living, good verbal skills and potential for employment and/or school. Her functioning with respect to activities of daily living and interpersonal relationships was

categorized as "moderate," with notations that she was withdrawn and had little support.[5] General symptoms, which had worsened over the previous year, included, in addition to those listed above, anger, crying spells, frequent upset, mood swings, restlessness, agitation, lack of energy and enjoyment, weight gain, panic attacks and excessive worry. The assessment contained a diagnosis of major depressive disorder, a GAF score of 45,[6] and assignment to the consumer group numbered one, which includes those persons who are "recently severely impaired" and whose impairment "totals six months or longer of the past year" in duration. (*Id.* at 222.)

The record contains treatment notes from Pathways spanning a period from February to October 2011. Jones was prescribed Celexa on February 2, 2011, and reported in April 2011 that it was not working. She was then prescribed Prozac. Shortly thereafter, she was taken off these medications and prescribed Abilify and Klonopin, followed by Geodon, which she advised was "really helping," resulting in "less agitation" and "less emotional reactivity" (*Id.* at 255). In June 2011, Plaintiff was "doing better" and in August was "fine." (*Id.* at 243, 249.) Her GAF scores throughout her treatment at Pathways ranged from 47 to 49. Notes reflected good to fair sleep quality and appetite; neat appearance; appropriate hygiene and speech; and anxious, depressed or labile mood. Thoughts were characterized as appropriate or "circumstantial."

Jones contends that the ALJ's failure to discuss her GAF scores and complete Pathways records, specifically those favorable to her claim, constituted error. It is well settled that "an

---

[5]In her brief, Jones twice advises the Court that the Pathways assessment form indicated she was "disabled" and "did not want to be left alone." (D.E. 11 at PageID 347, 351.) This is a misstatement of the administrative record. Although the quoted language does appear at the page cited, it falls next to a circled "H," which throughout the notes refers not to the Plaintiff herself but to her husband.

[6]A GAF score of 41-50 "reflects the assessor's opinion that the subject has serious symptoms *or* serious impairment of social or occupational functioning." *Miller*, 811 F.3d at 832.

9

ALJ can consider all the evidence without directly addressing in [her] written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (per curiam) (quoting *Loral Defense Sys.-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)). The ALJ observed in her opinion that, although the Pathways records indicated depression and anxiety, they also reflected an ability to express personal needs, good verbal skills, independence in daily activities, intact memory, good sleep and appetite, good judgment and normal mood and affect. Her characterization of the records may not have been the only possible interpretation, but neither was it an unreasonable one. The ALJ properly considered the materials from Pathways, weighed the evidence and resolved any conflicts therein. Considering the record as a whole, her decision that Jones's mental impairments were not disabling was supported by substantial evidence. *See Jackson v. Comm'r of Soc. Sec.*, Case No. 1:16-CV-236, 2016 WL 7009784, at *5 (W.D. Mich. Dec. 1, 2016) ("Arguments that an ALJ mischaracterized or 'cherry picked' the administrative record are frequently made and seldom successful, because the same process can be described more neutrally as weighing the evidence."); *Albanna v. Comm'r of Soc. Sec.*, Civil Action No. 15-cv-14264, 2016 WL 7238925, at *12 (E.D. Mich. Nov. 22, 2016) ("Arguments which in actuality require re-weighing record evidence beseech district courts to perform a forbidden ritual."), *report & recommendation adopted by* 2016 WL 7210715 (E.D. Mich. Dec. 13, 2016).

The ALJ's failure to discuss Plaintiff's GAF scores is also not erroneous. A GAF score "is isolated to a relatively brief period in time, rather than being significantly probative of a person's ability to perform mental work activities on a full-time basis." *Dunkle v. Comm'r of Soc. Sec.,* Civil Action 2:16-cv-240, 2017 WL 815103, at *9 (S.D. Ohio Mar. 2, 2017). Accordingly, the Sixth Circuit has observed that "the Commissioner has declined to endorse the

GAF score for use in the Social Security and Supplemental Security Income disability programs, and has indicated that GAF scores have no direct correlation to the severity requirements of the mental disorders listings." *Hernandez*, 644 F. App'x at 470 n.1 (quoting *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 415 (6th Cir. 2006)). While the scores may be useful in assisting the ALJ to formulate the RFC, they are not necessary to an ALJ's analysis of a claimant's mental functioning. *See Miller*, 811 F.3d at 835-36; *Edwards v. Comm'r of Soc. Sec.*, Case No. 15-11560, 2017 WL 708744, at *6 (E.D. Mich. Jan. 31, 2017), *report & recommendation adopted by* 2017 WL 697026 (E.D. Mich. Feb. 22, 2017); *see also Kornecky*, 167 F. App'x at 511 ("we are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place.").

Plaintiff further claims the ALJ particularly ignored evidence from Pathways notes and Dr. Wilson that she suffered difficulties with attention and concentration. As noted above, the ALJ must determine whether the claimant's impairments "meet any one of the items on a list of impairments presumed severe enough to render one disabled[.]" *Taskila,* 819 F.3d at 903 (internal quotation marks omitted). "The disability-qualifying impairment listings at step 3 are descriptions of various physical and mental illnesses and abnormalities defined in terms of several specific medical signs, symptoms, or laboratory test results." *Bowman v. Comm'r of Soc. Sec.*, ___ F. App'x ___, 2017 WL 1065553, at *4 (6th Cir. Mar. 21, 2017) (internal alterations & quotation marks omitted). If a claimant satisfies the requirements of a listing, she is automatically entitled to benefits without further inquiry. *Id.* When she alleges that her impairments "meet or equal a listed impairment, [s]he must present specific medical findings to satisfy the criteria of the particular listing." *Id.* "It is a claimant's burden at the third step of the

11

evaluation process to provide evidence that she meets or equals a listed impairment." *Blanton v. Soc. Sec. Admin.,* 118 F. App'x 3, 6 (6th Cir. 2004).

The ALJ considered whether the severity of Jones's mental impairments met or equaled the criteria of Listing 12.04. The Plaintiff does not challenge consideration of this listing. Impairments for affective disorders under § 12.04 must result in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Part 404, Subpart P, App. 1, § 12.04(B); *Bowman*, 2017 WL 1065553, at *4. "Marked" for purposes of the listing "means more than moderate but less than extreme." 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00C; *Bowman*, 2017 WL 1065553, at *4.

The Plaintiff makes no effort whatever to convince this Court that the requirements for Listing 12.04 have been met. She has pointed to no evidence in the record of marked restriction of activities of daily living or of repeated episodes of decompensation with extended duration. Nor has she offered proof of marked difficulties in maintaining social functioning beyond her statements that she did not feel like being sociable.

Because Jones has failed to demonstrate marked restriction of activities of daily living, difficulties in social functioning or repeated episodes of decompensation, even if she could establish marked deficits in attention and concentration, it would not be sufficient to meet the listing, as two of the enumerated restrictions are required. In addition, while Dr. Wilson opined that she had difficulties with attention and concentration, he made no finding that these problems were marked. The ALJ discussed the concentration, persistence and pace prong and Dr. Wilson's opinion, concluding that Jones's difficulties were only moderate. In doing so, she

noted the claimant was able to name and remember three objects in the office after five minutes, perform serial threes correctly, accurately spell the word "world" backward, name the president, provide correct examples of current events, complete paperwork in connection with her disability claim, and adequately participate in a face-to-face interview with a Social Security field officer. Accordingly, the ALJ properly considered Plaintiff's problems with attention and concentration and her determination is supported by substantial evidence. *See Bowman*, 2017 WL 1065553, at \*4-5 (where claimant lacked the requisite impairment-related limitations of Listing 12.04(B), ALJ's denial of benefits on that basis would not be overturned).

After finding that Jones's mental impairments did not meet the severity of Listing 12.04, the ALJ went on to conclude she had the RFC to perform medium work, limited to "simple, routine tasks with no exposure to the public and occasional changes in the work environment." (AR 21.) Proceeding to steps four and five of the sequential analysis, the ALJ posed a hypothetical to the VE consistent with her RFC determination, resulting in a finding that Plaintiff was not disabled. This determination was also reasonable and supported by substantial evidence in the record, including Dr. Khaleeli's opinion and the claimant's own daily activity reports of dressing and feeding her husband, cleaning house, running errands, frequently shopping, driving a car, paying bills, using a checkbook and handling a bank account.

Physical Limitations.

This assignment of error focuses on the "great weight" accorded by the ALJ to the November 16, 2010, assessment of non-examining state agency medical consultant Nathaniel D. Robinson, M.D., that Jones could occasionally lift and/or carry fifty pounds; frequently lift and/or carry twenty-five pounds; stand and/or walk six hours in an eight-hour workday; sit for six hours in an eight-hour workday; and frequently climb, balance, stoop, kneel, crouch and

crawl. Dr. Robinson further opined that the claimant was unlimited in her abilities to push and pull, and had no manipulative, visual, communicative or environmental limitations. Under the heading of "symptoms," he noted that "[t]he claimant has good musculoskeletal function" and her complaints "appear partially credible." (*Id.* at 210.) It was his conclusion that Jones suffered from a severe impairment that fell short of the listings.

In the early fall of 2011, nearly a year after Dr. Robinson provided his opinion, the Plaintiff underwent surgeries for extensive DVT in the left leg.[7] At a follow-up appointment shortly thereafter, James Gebhart, D.O., documented "some" continuing leg pain, "some" edema, but "[m]uch better control[]." (*Id.* at 288.) She was advised to keep the leg elevated and stop smoking.

State agency medical consultants such as Dr. Robinson "are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Social Security Act[.]" *Gibbens v. Comm'r of Soc. Sec.*, 659 F. App'x 238, 247 (6th Cir. 2016) (internal alterations & quotation marks omitted). Determinations by consulting physicians are more likely upheld "when the consultant conducts an in-person examination rather than formulating an opinion based solely on a review of the medical record." *Id.* at 247-48. "Where a non-examining source did not review a complete case record, [courts are to] require some indication that the ALJ at least considered these facts before giving greater weight." *Id.* at 248 (internal quotation marks omitted).

The ALJ, while acknowledging that Dr. Robinson did not examine the Plaintiff, noted that he "provided specific reasons for [his] opinion[] about the claimant's residual functional capacity reflecting that [it was] grounded in the evidence in the case record, including careful

---

[7]It appears from the record that two procedures were performed, one in September and another in October 2011.

consideration of the claimant's allegations about her symptoms and limitations." (AR 20.) She also stated that evidence received into the record after the issuance of his opinion did not provide any information that would have significantly altered it, and that there was no justification for any postural limitation. Plaintiff contends that, as Dr. Robinson did not have the records concerning her diagnosis of DVT before him and, thus, failed to account for any additional limitations arising from that impairment, the ALJ's assignment of weight to his assessment was erroneous. She further posits that the ALJ failed to explain her finding with respect to postural limitations.

The ALJ noted in her opinion that there was no evidence in the record of treatment for DVT prior to September 2011, a finding the Plaintiff does not challenge. She further concluded the DVT did not satisfy the definition of a "disability" under the Social Security regulations as there was nothing to suggest it was a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). Jones does not take issue with this conclusion either. The ALJ pointed out that Jones's condition was much better controlled after treatment and that, despite the fact smoking was a risk factor for DVT, Plaintiff continued to smoke one pack of cigarettes per day.[8]

---

[8]As the Sixth Circuit recognized in *Sias v. Secretary of Health & Human Services*, 861 F.2d 475, 480 (6th Cir. 1988) (per curiam),

> [t]he Social Security Act did not repeal the principle of individual responsibility. Each of us faces myriads of choices in life, and the choices we make, whether we like it or not, have consequences. If the claimant in this case chooses to drive [herself] to an early grave, that is [her] privilege — but if [s]he is not truly disabled, [s]he has no right to require those who pay social security taxes to help underwrite the cost of [her] ride.

15

The Plaintiff has offered nothing to convince the Court the ALJ erred. The ALJ noted that new information was presented after Dr. Robinson issued his opinion and properly considered the effect of that new evidence. While the Plaintiff insists that the record documents leg pain and edema, she leaves out the fact that the same record reflects much better control after treatment.

In addition, "[e]vidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 845 (6th Cir. 2004); *see also Petty v. Comm'r of Soc. Sec.*, Case No. 1:14-cv-01066-STA-dkv, 2017 WL 396791, at *3 (W.D. Tenn. Jan. 30, 2017) ("Evidence generated after the expiration of insured status and which does not relate to the claimant's condition on the date last insured is not relevant."). There is no evidence in the record to reflect that Plaintiff suffered from DVT during the relevant period. Dr. Sanner, in his July 2010 physical examination, noted strength of 5/5 in all major muscle groups and normal range of motion, including at the hips, knees and ankles, with no tenderness, redness, swelling, spasm, joint enlargement, muscle wasting, cyanosis, clubbing or edema. He also recorded normal gait and mobility and that Jones got up and out of a chair and on and off the examining table without difficulty. This evidence during the relevant period, as well as the 2010 functional reports of the Plaintiff that she cleaned house for two hours and mowed the yard, supports the ALJ's determination that Jones could perform medium work. The Court finds that substantial evidence supports the ALJ's reliance on Dr. Robinson's assessment.

The mere fact that the ALJ considered the DVT to be "severe" does not mandate a finding of disability or change the Court's conclusion, as "[a] claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish

the other." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007). Furthermore, to the extent Plaintiff's assertion with respect to postural limitations goes beyond her DVT, she points to no evidence in the record to establish that the ALJ's finding was erroneous.

Obesity.

"Obesity is a complex, chronic disease characterized by excessive accumulation of body fat." SSR 02-1p, 2002 WL 34686281, at *2 (Sept. 12, 2002); *Shilo v. Comm'r of Soc. Sec.*, 600 F. App'x 956, 959 (6th Cir. 2015). Social Security Ruling 02-1p requires the ALJ to consider a claimant's obesity at steps two through five of the sequential analysis. 2002 WL 34686281, at *3; *Miller*, 811 F.3d at 834-35. "The ruling does not mandate a particular mode of analysis, but it directs an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Miller*, 811 F.3d at 835 (internal quotation marks omitted).

The Centers for Disease Control has advised that an individual is considered obese if her body mass index ("BMI") exceeds 30. www.cdc.gov/obesity/adult/defining.html (last visited Mar. 30, 2017). Jones's height is listed in the record as five feet seven inches.[9] From July 2010 through July 2011, her weight fluctuated from 190 to 194.6 pounds, reflecting a BMI that ranged from 29.8 to 30.5.[10] While the claimant was technically obese at some points, she did not identify obesity as an impairment in paperwork submitted in support of her claim for disability benefits. More importantly, she proffered no evidence from a physician characterizing her as

---

[9] Notes from an April 27, 2011, examination at the Tennessee Department of Health reflect a height of five feet ten inches. This appears to be incorrect, as the remainder of the record consistently shows a height of five feet seven inches. Moreover, the Plaintiff appears to concede in her brief that her height is five feet seven inches.

[10] The BMIs used herein are based on the BMI calculator posted on the United States Department of Health and Human Services National Heart, Lung and Blood Institute's website. *See* www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm (last visited Mar. 7, 2017).

obese or opining that her weight imposed additional limitations on her ability to perform work or made her other conditions worse. The ALJ consequently had no evidence before her to consider regarding obesity. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011) (where plaintiff did not put her obesity at issue before the Commissioner, did not list it as an impairment, and offered no medical records or opinions describing her as obese or finding that obesity exacerbated her conditions, ALJ's failure to consider her obesity was not error).

*CONCLUSION*

For the reasons articulated herein, the Commissioner's determination will be AFFIRMED. A separate judgment shall issue.

IT IS SO ORDERED this 30th day of March 2017.

s/ J. DANIEL BREEN<br>
SENIOR UNITED STATES DISTRICT JUDGE